# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-3643

_____

| | | |
|---|---|---|
| Sean Moore, a disabled person, by his guardian Darlene Moore, | * * * | |
| Plaintiff - Appellee, | * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Terry Briggs, et al., | * * | |
| Defendants - Appellants, | * * | |

_____

Submitted: April 16, 2004
Filed: August 25, 2004

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MAGNUSON,* District Judge.

_____

LOKEN, Chief Judge.

Sixteen employees of the St. Charles Habilitation Center ("the Center") appeal a district court order denying them qualified immunity from Sean Moore's § 1983 claim that they violated his constitutional right to substantive due process by failing to protect him from assault by another resident. Qualified immunity shields government officials from liability for civil damages for discretionary acts that do not

_____

*The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation.

"violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We have jurisdiction to consider issues of law raised by the pretrial denial of qualified immunity; we review those issues *de novo*. King v. Beavers, 148 F.3d 1031, 1033 (8th Cir.), cert. denied, 525 U.S. 1002 (1998). We conclude that Moore has failed to show that defendants acted with the degree of culpability required to establish a substantive due process violation and therefore reverse.

## I.

The Center is a residential group home for the mentally retarded operated by the State of Missouri Department of Mental Health. The Center has both voluntarily and involuntarily committed residents. In 1995, Darlene Moore, Sean Moore's legally-appointed guardian and mother, placed him at the Center. Moore was then twenty-three years old. He suffers from moderate mental retardation, Down syndrome, and impaired hearing.

Cardell Hunn was transferred to the Center in March 1998. He was then a sixteen-year-old mentally retarded pedophile under family court supervision for sexual abuse of a young child. The Center initially placed him on "1:1 Staff Supervision," within arm's reach of staff at all times. Three days later, supervision was reduced to "Eye Contact," which requires continuous staff supervision, and the next day to "Close Supervision," which requires staff checks every fifteen minutes. In April, Hunn was found crouching behind the door of a male resident's room, pulling up his pants. In June, when the same resident complained that Hunn made him bend over the bed, Hunn admitted he hit the resident on his "bootie" and it had happened twice before. An emergency room examination of the victim revealed no evidence of trauma or rape. The next day, the Center placed Hunn on Eye Contact supervision, moved him to another cottage at the insistence of the other resident's family, and placed an alarm on Hunn's door.

Three days later, on June 8, 1998, the Center moved Hunn to the home where Moore resided, reduced Hunn's supervision level to Close Supervision during waking hours with checks every thirty minutes, and again placed an alarm on his door. At 9:55 p.m. on August 13, a staff member observed Hunn coming out of Moore's room. When confronted, Hunn had a finger from a rubber glove in his hand. He said he had been "digging in [Moore's] bootie" and admitted the same thing happened two weeks earlier. Examination of Moore revealed no irritation or semen. Moore's guardian removed him from the Center in July 1999 and filed this lawsuit one year later.

## II.

Moore's complaint alleged that defendants violated his substantive due process right to be free of physical and emotional abuse by failing to protect him from Hunn's sexual assaults. In general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). We have recognized two exceptions to DeShaney's general rule. See Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732-34 (8th Cir. 1993); Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc), cert. denied, 507 U.S. 913 (1993). The district court's opinion denying qualified immunity and the parties' briefs on appeal focus primarily on whether Moore's residency at the Center falls within one or both of these DeShaney exceptions, so that defendants had a *constitutional* duty to protect Moore from Hunn's alleged assaults. We need not consider these issues because, even if defendants had such a duty, their alleged conduct did not reflect the level of culpability necessary to establish a substantive due process violation.

A substantive due process violation requires proof that a government official's conduct was conscience-shocking and violated one or more fundamental rights. Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue). "[T]he constitutional concept of conscience

shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). Thus, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 849; see Daniels v. Williams, 474 U.S. 327 (1986); S.S. v. McMullen, 225 F.3d 960, 964 (8th Cir. 2000) (en banc), cert. denied, 532 U.S. 904 (2001).

In this case, defendants acted under circumstances in which actual deliberation was practical. Therefore, their conduct *may* shock the conscience of federal judges only if they acted with "deliberate indifference." Lewis, 523 U.S. at 851-52. To define deliberate indifference for Eighth Amendment purposes, the Court has adopted the subjective standard of criminal recklessness -- "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In Lewis, the Court equated deliberate indifference for substantive due process and Eighth Amendment purposes. 523 U.S. at 849-50. Applying this standard, and accepting Moore's allegations of defendants' conduct as true, we conclude that the alleged conduct does not reflect deliberate indifference.

The complaint alleged that defendants Dan Perkins and Marion Scott were the developmental assistants assigned to supervise Moore and Hunn on August 13, 1998, the day when Hunn seemingly admitted two assaults. The complaint further alleged that these defendants "knew that Sean Moore faced a substantial risk of serious harm and disregarded that risk by failing to take adequate measures to protect him in failing to supervise Hunn and Sean Moore." The summary judgment record contains no evidence of what Perkins or Scott knew or what adequate measures they allegedly failed to take. Thus, the record is devoid of evidence showing the subjective recklessness required to prove deliberate indifference. The claim that Perkins and Scott "unreasonably failed to exercise a duty to supervise [Hunn] to prevent him from

. . . harming [Moore], is a claim of negligence" that cannot be the basis of a constitutional tort claim. Davis v. Fulton County, 90 F.3d 1346, 1353 (8th Cir. 1996).

The complaint alleged that defendants James Dapron, Terry Briggs, Willie Allen, Bill Anthony, Margo Savala, Shawn Beckman, Carol Clark, Charlie Ikiemeir, Mary Beth Bowman, Dustin Davis, Gina Mills, and Samornchit Tansuwan were employed by the Center and assigned to Hunn's "Interdisciplinary Team." It is further alleged that these defendants disregarded a known risk of serious harm to Moore by reducing Hunn's level of supervision in March 1998, by failing to order one-on-one supervision after Hunn assaulted another resident in June, by placing Hunn in Moore's residence and removing eye contact supervision, by allowing staff to rely on a door alarm to monitor Hunn, by failing to review Hunn's treatment plan and remove him from the Center when he first assaulted a resident, by failing to provide Hunn regular psychotherapy, and by failing to notify Moore's guardian of the known danger from Hunn. Again, the summary judgment record contains no specific evidence that would support a finding of subjective recklessness by any of these defendants. It is undisputed that Hunn's supervisors took a number of measures to ensure that Hunn's contacts with other Center residents were properly supervised. Moore challenges the adequacy of these measures, but that is a negligence claim. See Curry v. Crist, 226 F.3d 974, 978 (8th Cir. 2000); Jackson v. Everett, 140 F.3d 1149, 1152-53 (8th Cir. 1998). In this regard, our analysis must be based on the record evidence of defendants' conduct, not on the conclusory allegations of deliberate indifference in the complaint. See Wells v. Walker, 852 F.2d 368, 371 (8th Cir. 1988), cert. denied, 489 U.S. 1012 (1989).

The complaint alleged that John Solomon, Director of the Division of Mental Retardation and Developmental Disabilities, and supervisory employees Sandra Williams-Steele, James Dapron, Terry Briggs, and Willie Allen disregarded a known risk of serious harm to Moore by accepting custody of Hunn, a criminally retarded offender, and putting Hunn in Moore's presence knowing the Center's staff could not

adequately supervise Hunn; by inadequately staffing the Center; by failing to implement adequate procedures to supervise Hunn's contacts with other residents; and by failing to adequately train and supervise the staff who would directly supervise Hunn and Moore. Again, the summary judgment record contains no evidence of subjective recklessness by any of these defendants. General allegations that management officials failed to ensure that staff would protect other residents from Hunn's known assaultive behavior "is the kind of 'traditional tort law' claim that the Supreme Court has refused to translate into a due process violation." Dorothy J., 7 F.3d at 733. The failure to train and supervise claims fail for want of proof of the underlying substantive due process claims. See, e.g., Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 959 (8th Cir. 2000).

For the foregoing reasons, we conclude that the summary judgment record viewed most favorably to Moore fails to adequately support the alleged substantive due process violation. That ends the qualified immunity inquiry. See Lewis, 523 U.S. at 841 n.5. Accordingly, the order of the district court dated September 30, 2003, is reversed in part and the case is remanded with directions to dismiss Count II of the amended complaint with prejudice as to all defendants.

_____