# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2714

_____

| | | |
|---|---|---|
| Jerry Hart; Andre Dyer, | * | |
| | * | |
| Plaintiffs/Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Little Rock, | * | |
| | * | |
| Defendant/Appellant. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| _____ | * | District of Arkansas. |
| | * | |
| Arkansas State Lodge Fraternal Order | * | |
| of Police, | * | |
| | * | |
| Amicus on behalf of | * | |
| Appellee. | * | |

_____

Submitted: October 10, 2005
Filed: December 22, 2005

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Police officers Jerry Hart and Andre Dyer successfully sued the City of Little Rock, Arkansas (Little Rock or the City) under 42 U.S.C. § 1983 alleging substantive due process violations. A jury awarded each officer $225,000, and the district court

denied Little Rock's motions for judgment as a matter of law (JAML) and a new trial. We reverse.

I

Hart and Dyer are police officers employed by Little Rock. On May 30, 2001, they arrested Michael Bullock on drug charges. Bullock, who has three other felony convictions, had previously been arrested by Hart and Dyer and had filed complaints against them. In the course of the criminal proceedings against Bullock, his lawyer, at Bullock's behest, subpoenaed Hart's and Dyer's city personnel files. The subpoena was received by Stacey Witherell, an employee in Little Rock's human resources department. It directed Little Rock to produce the files at trial, but a cover-sheet indicated the City could comply by providing copies ahead of trial. Witherell, in accordance with Little Rock's practice, made copies of the complete files and gave them to the lawyer on the same day the subpoena was received.

Bullock eventually pleaded guilty but not before his legal counsel gave him copies of the files containing personal information about Hart and Dyer, including home addresses, social security numbers, names and addresses of family members, driver's license numbers, etc. While incarcerated awaiting trial, Bullock told other inmates and a sheriff's deputy he had the files and suggested the information could be used to cause problems for Hart and Dyer. After Bullock talked to the deputy, the copies were seized and destroyed.

Hart and Dyer sued Little Rock alleging the disclosure of the personnel files violated their substantive due process rights. Specifically, they alleged the disclosure violated their privacy rights, implicating their fundamental interests in preserving personal security and bodily integrity. Little Rock's motion for summary judgment was denied and the case proceeded to trial. At trial, Hart and Dyer argued Little Rock's practice of releasing employee personnel files without redaction or notice to

the employees demonstrated deliberate indifference to their privacy rights. As police officers, they contended the release of information was especially egregious because it placed them in grave danger from criminals who might retaliate against them or family members. Both Hart and Dyer testified the disclosure of their personnel files caused them much fear and anxiety. Hart testified he moved out of his apartment, lost weight, became impatient, worried about his personal safety and his family's safety, and missed work because he felt betrayed by the City. Dyer testified he also worried constantly about his and his family's safety, changed his routine, took additional safety measures, e.g., taught his wife to shoot a rifle, bought additional weapons, and reinforced the doors to his home. Other witnesses testified he became short-tempered, paranoid and appeared stressed.

Over Little Rock's objection, the district court also allowed evidence of an incident where Hart and Dyer were shot at during an unrelated drug arrest. The incident did not involve Bullock but was apparently admitted to illustrate the dangerousness of their jobs and to show their safety concerns were well-founded. Additionally, the district court allowed Hart and Dyer to present evidence that Shawn Jimenez, an acquaintance of Bullock's, once attempted to hire an undercover police officer to kill them.[1]

The jury concluded Little Rock's release of the personnel files was a violation of the officers' substantive due process rights and awarded each $225,000. In post-trial motions, the district court denied Little Rock's motions for JAML and a new trial, and granted Hart's and Dyer's motions for costs and attorney's fees. On appeal, Little Rock contends the district court erred in denying its motion for JAML because the evidence was insufficient to support the substantive due process claims. Little Rock also contends the district court should have granted its new trial motion because the

---

[1]Bullock was not connected to the murder-for-hire scheme but knew Jimenez and lived in the same neighborhood.

evidence relating to the shoot-out and Jimenez was improperly admitted. Finally, Little Rock contends the damage awards were unsupported by the evidence, requiring either a new trial or remittitur.

II

Little Rock first contends the district court erred in denying its JAML motion because the evidence was insufficient to prove it violated Hart's and Dyer's substantive due process rights under §1983. We agree.

We review the district court's denial of JAML "in the light most favorable to the party who prevailed before the jury." City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 651 (8th Cir. 1989). Accordingly, we

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Pumps & Power Co. v. So. States Indus., 787 F.2d 1252, 1258 (8th Cir. 1986) (quotations omitted).

A § 1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." Kuha v. City of Minnetonka, 365 F.3d 590, 606 (8th Cir. 2004) (quoting Shrum v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001)). Hart and Dyer allege substantive due process violations, arguing Little Rock's release of their personnel files greatly increased the risk of harm by private individuals who might retaliate against them as police officers.

Generally, states have no affirmative obligation to protect individuals against private violence.  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).  The Due Process Clause of the Fourteenth Amendment "is phrased as a limitation on a state's power to act, not as a guarantee of certain minimal levels of safety and security."  Id. at 195.  "Its purpose [is] to protect the people from the State, not to ensure that the State protect[s] them from each other."  Id. at 196.  The "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  Id. at 197.

Substantive due process does, however, require a state to protect individuals under two theories.  First, the state owes a duty to protect those in its custody. Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc).  Second, the state owes a duty to protect individuals if it created the danger to which the individuals are subjected.  Id.  Hart and Dyer rely on the "state-created danger" theory. We assume without deciding that Little Rock's release of Hart's and Dyer's personnel files created sufficient danger to implicate constitutionally protected privacy interests. Additionally, we conclude element two is satisfied because there is no dispute the alleged constitutional violation was precipitated by state action.  Accordingly, our analysis will focus on the third element of their § 1983 claim – whether the evidence proved Little Rock acted with the requisite degree of culpability.

The Due Process Clause's "guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm[,]" County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998), and "does not transform every tort committed by a state actor into a constitutional violation," DeShaney, 489 U.S. at 202.  "[I]f the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, *depending on his or her state of mind*, may have committed a constitutional tort."  S.S. v. McMullen, 225 F.3d 960, 962 (8th Cir. 2000) (en banc) (emphasis added).  "[T]he test we employ to ascertain a valid substantive due process violation is 'whether the behavior of the

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Hawkins v. Holloway, 316 F.3d 777, 780 (8th Cir. 2003) (quoting Lewis, 523 U.S. at 848 n.8).

Under the state-created danger theory, Hart and Dyer must prove 1) they were members of a limited, precisely definable group, 2) Little Rock's conduct put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to Little Rock, 4) Little Rock acted recklessly in conscious disregard of the risk, and 5) in total, Little Rock's conduct shocks the conscience. Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citing Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)).

Mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights. Terry B. v. Gilkey, 229 F.3d 680, 684 (8th Cir. 2000). Indeed, "[w]e have held more than once that gross negligence 'is not actionable . . . under § 1983.'" S.S., 225 F.3d at 964 (quoting Sellers by and through Sellers v. Baer, 28 F.3d 895, 902-03 (8th Cir. 1994)). "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability," Lewis, 523 U.S. at 848, and "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," Id. at 849. Instead, "[a]ctionable substantive due process claims involve a level of . . . abuse of power so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." Avalos, 382 F.3d at 800 (quoting S.S., 225 F.3d at 964) (internal quotations omitted); see also Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (Substantive due process violations involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (quoting In re Scott County Master Docket, 672 F. Supp. 1152, 1166 (D.

Minn. 1987)). "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (citing Lewis, 523 U.S. at 848-49) (holding the deliberate indifference standard is applied when actual deliberation is practical)).

In this case, Little Rock acted under circumstances in which actual deliberation was practical. Therefore, its conduct shocks the conscience only if it acted with "deliberate indifference." Id. at 851-52. To define deliberate indifference for Eighth Amendment purposes, the Supreme Court has adopted the subjective standard of criminal recklessness, i.e., "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In Lewis, the Court equated deliberate indifference for substantive due process with Eighth Amendment deliberate indifference. 523 U.S. at 849-50. Thus, to sustain the district court's denial of JAML, we must conclude there was sufficient evidence to find Little Rock acted intentionally or wrongfully in disregarding a known danger. Avalos, 382 F.3d at 800. Conversely, if we conclude Little Rock's conduct was merely negligent or even grossly negligent, the denial of JAML must be reversed. See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he *should have perceived* but did not, while no cause for commendation, cannot under our cases be condemned . . . .") (emphasis added).

The evidence showed Witherell was aware the personnel files contained sensitive information and the request for the files was related to a criminal proceeding in which Hart and Dyer were likely involved. Additionally, Witherell testified she understood why police officers would not want their personal information released to criminal defendants – as she herself would not want her personal information released to a criminal defendant. Based on this testimony, Hart and Dyer argue she knew there was a substantial risk Bullock might obtain and use the information to harm them or

their families and chose to ignore the risk. We disagree. While it is clear Witherell appreciated the sensitive nature of the information, there is no evidence proving she ever considered whether it would be disseminated to Bullock or another criminal defendant. Hart and Dyer make much of Witherell's testimony indicating she would be concerned if her personal information fell into the hands of a known felon. It is, however, not enough for her to testify she understood why police officers would want to protect such information from disclosure to criminal defendants. Instead, Hart and Dyer must prove Witherell actually considered the specific risk at the time she responded to the subpoena. We conclude the evidence was insufficient to support a finding Witherell ever considered, *at the time she processed the request*, whether the information would be disseminated to a criminal defendant who might use it to harm Hart and Dyer.

Hart and Dyer next contend Little Rock was fully aware the information contained in city personnel files is sensitive in nature and the practice of releasing it to third persons proves deliberate indifference. They argue "the City knew or should have known . . . that providing the . . . personnel files . . . placed [them] . . . at a significant and increased risk of harm." Appellees' Br. at 39. We appreciate how the release of personal information about police officers to criminal defendants could seriously impact their safety. Hart and Dyer, however, were required to prove not only the creation of a significant risk *but also* Little Rock's conscious disregard of the risk. The mere fact Little Rock made it a practice to release such information does not prove it ever considered the specific risks articulated by Hart and Dyer. Assuming, as argued by Hart and Dyer, the City "knew or should have known" its actions exposed them to a significant and increased risk of harm, the evidence only proves the City acted negligently – not with deliberate indifference. Based on this record, we are compelled to conclude the evidence was insufficient to permit the jury to find Little Rock recognized and deliberately disregarded the substantial risk of serious harm alleged by Hart and Dyer. See Beck v. Wilson, 377 F.3d 884, 891 (8th Cir. 2004).

Today's holding comports with our previous applications of the standard plaintiffs must meet to prove a substantive due process violation. In Beck v. Wilson, the plaintiff (Beck) alleged substantive due process violations against several staff members of an alcohol and drug treatment facility after she was sexually assaulted by a male patient. 377 F.3d at 885. Beck had been court ordered to a treatment facility for males and females but at the time of her admission she was the only female patient. On her first evening there, Beck told staff members she was fearful of male patients who whistled at her and called her "baby girl." Id. at 886. The very next evening, a male patient entered a bathroom while Beck was showering (the bathroom doors could not be locked) and sexually assaulted her. Id. In the days following the attack, the male patient repeatedly threatened to kill Beck and her children if she reported the attack.

The evidence on summary judgment revealed no previous incidents of sexual assault, but staff members were aware of previous incidents of unwelcome sexual behavior. Id. at 887. It also showed patients could not lock their bedroom or the bathroom doors and the facility had no internal surveillance system. Instead, staff members monitored patients from a nurses' station at the end of a hallway and were required to conduct visual verifications on patients every fifteen minutes. Id. at 886. At the time Beck's assault occurred, there was no staff member monitoring patients from the nurses' station and the staff failed to perform the mandated visual verifications. Id. at 890-91. Nevertheless, we reversed the district court's denial of summary judgment, holding the staff members' failure to follow procedure constituted "at most, a negligent omission and a negligent act . . . on which . . . the alleged rapist capitalized to assault Beck." Id. We concluded "[t]he summary judgment facts do not permit a reasonable jury to conclude . . . any male inpatient . . . posed a known threat . . . and, even more clearly, the facts do not permit a jury to infer [the staff] *deliberately decided not to protect Beck from a known substantial risk of serious harm*." Id. at 891 (emphasis supplied).

In S.S. v. McMullen, we rejected a similar substantive due process claim premised on a state's failure to prevent sexual abuse. 225 F.3d at 962. S.S. alleged the Missouri Division of Family services violated her substantive due process rights when it released her from state custody and returned her to her father, knowing he had previously allowed a known pedophile to have contact with her. S.S. alleged she was released to her father even though the pedophile had personally contacted one of the defendants protesting attempts to limit his contact with her. After S.S. was returned to her father, the pedophile sexually abused her on at least two occasions. Id. On appeal from the district court's grant of summary judgment, we held the state's actions did not shock the conscience. "Even if the state's activities could be said to have been grossly negligent or even reckless in the circumstances present here, we believe that S.S.'s constitutional claim must fail." Id. at 964. "We do not see how we could well hold those acts actionable without violating the Supreme Court's caveat against making 'of the Fourteenth Amendment a font of tort law . . . .'" Id. (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).

We are troubled by Little Rock's practice of releasing its employees' personnel files – especially those of police officers – without notice or any attempt to redact sensitive personal information. Nevertheless, we conclude the evidence shows Little Rock's actions constitute at most negligence or gross negligence and do not rise to the level of subjective deliberate indifference necessary to sustain a substantive due process claim.

Despite their failure to prove deliberate indifference, Hart and Dyer argue the district court's denial of JAML should be affirmed based on the Sixth Circuit's holding in Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998). In Kallstrom, three undercover police officers sued the City of Columbus because it released their personnel files to the attorney representing members of a violent gang. During the defendants' criminal trials, it became apparent the information contained in the files had been disseminated to them. Id. at 1059. The officers brought suit, and on appeal

from a grant of summary judgment the <u>Kallstrom</u> court held the city's practice of releasing undercover police officers' personnel files under such circumstances created a "constitutionally cognizable 'special danger,' giving rise to liability under § 1983." <u>Id.</u> at 1067. According to Hart and Dyer, their case is factually indistinguishable from <u>Kallstrom,</u> and the district court was correct when it denied JAML on the basis of <u>Kallstrom</u>. <u>See</u> Addendum at A-16 (District Court Order dated February 25, 2004 denying JAML). We disagree. The <u>Kallstrom</u> court based its holding on a finding "[t]he City either knew or clearly should have known" releasing the officers' personal information substantially increased their "vulnerability to private acts of vengeance." <u>Id.</u> In so holding, the <u>Kallstrom</u> court erroneously applied a negligence standard instead of the subjective deliberate indifference standard adopted in <u>Farmer</u>. 511 U.S. at 837. The district court's reliance on <u>Kallstrom</u> indicates it too improperly adopted a negligence standard, making the denial of Little Rock's motion for JAML erroneous.

III

For these reasons, we conclude the district court erred in denying Little Rock's motion for JAML. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Because we reverse the district court's denial of JAML we do not reach the other issues raised by Little Rock in its appeal.

_____

-11-