# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2383
_____

Estate of Ronald E. Johnson, and through its Personal Representative, Lynette K. Johnson; Lynette K. Johnson, Individually

*Plaintiffs - Appellants*

v.

Douglas Weber; Troy Ponto; Darin Young; Crystal Van Vooren; Denny Kaemingk; Laurie Feiler; Timothy A. Reisch; South Dakota Department of Corrections; State of South Dakota; John Does 1-20

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: February 11, 2015
Filed: May 4, 2015

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

The Estate of Ronald E. Johnson and Lynette K. Johnson (collectively, "Johnson") commenced this 42 U.S.C. § 1983 complaint alleging violations of the constitutional and state law rights of the deceased Ronald Johnson. The district

court[1] granted summary judgment to defendants. Johnson filed the instant appeal, arguing summary judgment was improper. We affirm.

I

Pursuant to the proper standard of review, described below, the following are the facts as most favorable to Johnson. At the time of his death, Ronald Johnson was a prison guard for the South Dakota State Penitentiary ("the penitentiary"), a South Dakota Department of Corrections ("DOC") facility in Sioux Falls, South Dakota. On April 12, 2011, Rodney Berget and Eric Robert, inmates at the penitentiary, attempted to escape and in the process intentionally murdered Robert Johnson. Berget and Robert were convicted of first degree murder and sentenced to death.

Rodney Berget first came to the penitentiary at the age of fifteen after escaping at least twice from his placement at South Dakota's State Training School. During his lifetime, Berget amassed multiple convictions for grand theft, burglary, escape, and attempt to escape. He spent most of his life in the South Dakota prison system. In addition to his two escapes from the State Training School, Berget escaped from the penitentiary on three separate occasions, the last of which occurred in 1987. None of Berget's escapes or escape attempts were violent and although Berget has a history of violence, he did not have a history of institutional violence. Berget was last incarcerated in 2003, and was initially placed in the maximum security area, but in 2004 was transferred to the medium security area, West Hall. Berget had various disciplinary problems during this incarceration, including refusing housing assignments and conducting hunger strikes. During his incarceration Berget was transferred to segregation at various times and would thereafter return to West Hall. The paperwork for transfers was not always timely and properly completed, and

_____

[1]The Honorable Larry Piersol, United States District Judge for the District of South Dakota.

Johnson alleges at least some transfers were negotiated in exchange for ending hunger strikes.

Eric Robert had no criminal history when he arrived at the penitentiary in 2006 to serve an eighty-year sentence for kidnapping. Robert did not have a history of institutional violence prior to the murder of Ronald Johnson, but in 2007 was discovered making preparations for an escape attempt. Thereafter, Robert was moved to maximum security and the DOC learned through a confidential informant Robert had threatened a correctional officer. Robert conducted a hunger strike and was moved from maximum security into West Hall. The paperwork process was not followed and Johnson alleges the transfer was negotiated in exchange for ending the hunger strike.

Although no concrete threats or plans were known by any of the defendants, there was some forewarning of an escape attempt. In 2009, the DOC received information from an inmate indicating Berget and Robert were planning an escape attempt. In 2010, the DOC received similar information from a different inmate. During this same time frame, correctional officer Chester Buie observed Robert and Berget had developed a relationship. Johnson heavily relies on a media report claiming the DOC knew Robert and Berget were planning an escape attempt in which they intended to murder a guard. The only evidence Johnson presents indicating the DOC may have known of a murder and escape plot comes from a media interview given immediately after the murder by Jesse Sondreal, the state's attorney who had prosecuted Robert and Berget. Sondreal testified he told the media he previously learned about a murder and escape plan. Sondreal's deposition testimony made clear the information did not originate from any of the defendants, but rather came from the Department of Criminal Investigation. Sondreal could not identify any details of the alleged escape and murder plot, but understood the threat to a guard was related to

Robert's 2007 escape attempt.[2]  No other witnesses corroborate the information Sondreal provided to the media and Sondreal could produce no notes or e-mails to show exactly what he learned and from whom.

Berget and Robert ultimately ended up residing near each other in West Hall. At the time of the murder, Robert held the job of laundry cart pusher, requiring Robert to push a cart to and from the laundry building, which was separate from West Hall.  Berget held various orderly jobs during his incarceration and was a trash-recycling orderly at the time of the murder.  The jobs held by Robert and Berget did not require direct correctional supervision at all times.  Taking advantage of the relative freedoms offered by their jobs, on April 12, 2011, Robert and Berget left West Hall and proceeded to an unauthorized area of the penitentiary where they murdered Ronald Johnson and attempted to escape from the penitentiary.  The escape attempt was unsuccessful and Robert and Berget were convicted of murder.

Johnson thereafter commenced this suit in South Dakota state court.  Johnson named as defendants the State of South Dakota; the South Dakota Department of Corrections; Douglas Weber, the then-warden at the South Dakota State Penitentiary; Troy Ponto, as associate warden; Darin Young, a former associate warden and current Warden at the penitentiary; Crystal Van Vooren, a major who has worked for the DOC since 1989; Dennis Kaemingk, the Secretary of the DOC whose appointment became effective on May 2, 2011; Laurie Feiler, the Deputy Secretary of Corrections; Timothy A. Reisch, the former Secretary of Corrections until becoming Adjutant General for South Dakota on April 2, 2011; and twenty John Does.  Johnson brought a federal constitutional claim under 42 U.S.C. § 1983 and five state law claims, alleging defendants were constitutionally liable for the murder of Robert Johnson because Robert and Berget had violent criminal pasts, escape histories, were

---

[2] Johnson does not argue Robert's 2007 escape attempt included a plan to murder a prison guard, and no evidence in the record supports such a claim.

maximum-security inmates housed in the wrong area, made deals with the Warden, did not have proper classification paperwork, and had too much freedom of movement in their jobs. The defendants removed the action to federal court.

The district court found defendants entitled to qualified immunity and granted summary judgment on Johnson's constitutional claims. The district court remanded the remaining state law claims. Johnson appeals.

II

"We review a district court's decision to grant a motion for summary judgment *de novo*, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment motions, the burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Ricci v. DeStefano, 557 U.S. 557, 585 (2009)).

"Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Review of a grant of summary judgment based upon the granting of a claim of qualified immunity is a

two-step process. First, we consider whether the evidence demonstrates that the defendants' conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If there was a constitutional violation, we next consider whether the right violated was clearly established. See id.

Johnson's complaint alleges a constitutional due-process claim asserting liability for the injury caused to Ronald Johnson by Robert and Berget. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989) (holding the failure of the county's Department of Social Services to provide a child with adequate protection against his father's violence did not violate the child's substantive due process rights). However, substantive due process does require a state to protect individuals under two specific circumstances. "First, the state owes a duty to protect those in its custody." Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005). "Second, the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." Id. Johnson relies on the state-created-danger theory of liability.

"To succeed on such a theory, [a plaintiff] must prove (1) that [Ronald Johnson] was a member of 'a limited, precisely definable group,' (2) that the [defendants'][3] conduct put [Ronald Johnson] at a 'significant risk of serious, immediate, and proximate harm,' (3) that the risk was 'obvious or known' to the [defendants], (4) that the [defendants] 'acted recklessly in conscious disregard of the

_____

[3] We are cognizant that in § 1983 suits "each defendant's conduct must be independently assessed" because § 1983 "does not sanction tort by association." Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010). In this appeal, we need not separately examine the individual actions of the various defendants because we find, even taking into consideration the acts of all the defendants together, no constitutional rights were violated.

risk,' and (5) that in total, the [defendants'] conduct 'shocks the conscience.'" Fields v. Abbott, 652 F.3d 886, 891 (8th Cir. 2011) (quoting Hart, 342 F.3d at 805).

Under the state-created-danger theory, negligence and gross negligence cannot support a § 1983 claim alleging a violation of substantive due process rights. Hart, 432 F.3d at 805. "Instead, actionable substantive due process claims involve a level of abuse and power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." Id. at 806 (alterations and internal quotation marks omitted). "The test we employ to ascertain a valid substantive due process violation is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 805 (alteration and internal quotation marks omitted).

Although proof of intent to harm is usually required, in certain cases proof of deliberate indifference will satisfy this substantive due process threshold. Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (en banc). In cases where "defendants acted under circumstances in which actual deliberation was practical . . . , their conduct may shock the conscience of federal judges only if they acted with 'deliberate indifference.'" Moore ex rel. Moore v. Briggs, 381 F.3d 771, 773 (8th Cir. 2004) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 851-52 (1998)). The deliberate indifference standard applied in a substantive due process case is the same as that applied in Eighth Amendment cases: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Moore, 381 F.3d at 773-74 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

On appeal, Johnson argues the district court erred in its analysis of the Hart factors and argues the actions of the defendants shock the conscience. First, Johnson alleges the district court erred in taking into account only the most recent housing and job assignments in its analysis in light of the temporal requirement of the second Hart

-7-

factor. We need not determine exactly how "immediate" a harm must occur under Hart, because even considering housing decisions as early as 2004 there is no evidence of deliberate indifference or conscious-shocking conduct. We need not analyze all five Hart factors because we conclude, even viewing the facts in the light most favorable to Johnson, the defendants' conduct did not shock the conscience. Fields, 652 F.3d at 891.

Johnson alleges the job assignments shock the conscience because Robert and Berget were given too much freedom of movement and freedom from supervision. We disagree. Berget had worked as an orderly for many years without creating a known threat of harm to any correctional officer. The defendants were not indifferent to any alleged threat because no reported threat carried enough specificity for this Court to determine the penitentiary staff should have drawn an inference of a substantial risk of harm. See Moore, 381 F.3d at 774. Despite the histories of Berget and Johnson, the defendants were not deliberately indifferent in allowing Berget and Robert to hold these prison jobs.

Johnson alleges moving Berget to a medium security housing area shocks the conscience, particularly in light of missing paperwork and alleged hunger strike deals. Johnson maintains Berget had no right to be placed outside the maximum unit based on his criminal history, escape history, and institutional conduct. This is correct; Berget would have no viable challenge to a maximum security placement. See Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970). However, moving Berget to a medium security area, although not required, does not shock the conscience, particularly in light of DOC policy allowing Warden discretion in housing assignments.

Although Berget had a substantial history of escaping and escape attempts and Robert had attempted to escape, and although both committed violent crimes before incarceration, neither Robert nor Berget had committed a murder and neither Robert nor Berget had committed a violent act in prison or shown any propensity for prison

violence. Johnson argues Robert and Berget were extremely dangerous inmates. In retrospect that allegation is certainly true. The murder perpetrated on Ronald Johnson shocks the conscience of this Court; however, the record does not demonstrate it was deliberate indifference to not consider Robert and Berget extremely dangerous before the murder of Ronald Johnson. We need not decide whether allowing an extremely dangerous inmate to reside in general population with the opportunity to murder shocks the conscience, because the histories of Robert and Berget do not support deliberate indifference in failing to consider them highly dangerous. Even with vague notice of a planned escape attempt, the defendants were not deliberately indifferent in failing to place Robert and Berget in maximum security. No prior escape attempts included violence and none had been successful after 1987.

South Dakota Codified Laws § 24-2-27 contemplates the DOC will have control of housing and classification of inmates. DOC policy contemplates the same, and, despite a policy of basing housing on classification, allows Warden discretion. Although the paperwork was not always completed for the discretionary housing decisions, it was within the Warden's power to move Robert and Berget from the maximum security facility to the West Hall. We do not find the DOC's policies on Warden discretion to shock the conscience and we do not find the Warden acted with deliberate indifference in his transfers of Robert and Berget.

III

Accordingly, we affirm the judgment.

_____