# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1897

_____

William Billy Gene Carter

*Plaintiff - Appellant*

v.

Kenny Huterson; Loratea Akers; Vickie Dye; Cynthia Jannaman; Lance Brown;
Janet Heyer; Sandy Swanson; Angel Lawson; Heather Richards; Alexey Nikitin;
David R. Hunter; Rhinnia Andrews; Kenneth Hutchason; Loretta Akers; Stanley
Lance Brown

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: June 16, 2016
Filed: August 8, 2016

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

William Carter sued employees of the Missouri Department of Mental Health
("DMH") under 42 U.S.C. § 1983.  Carter alleged that these defendants violated his
Fourth, Eighth, and Fourteenth Amendment rights by forcibly collecting his

fingerprints, a mouth swab, and a blood sample while he was confined at Fulton Hospital as a civilly committed sexually violent predator. The district court[1] dismissed Carter's complaint for failure to state a claim. We affirm.

I.

In 2002, Carter pleaded not guilty by reason of mental disease or defect to various charges related to the kidnapping and deviate sexual assault of his sixteen-year-old neighbor. As a result of this plea, Carter was committed to the custody of the DMH. Carter's subsequent application for conditional release triggered mandatory review of his eligibility for involuntary civil commitment under Missouri's Sexually Violent Predators Act, Mo. Rev. Stat. § 632.480-513. Pursuant to that statute, a jury found Carter to be a sexually violent predator, and Carter therefore remained confined at Fulton State Hospital, a facility under the direction of the DMH.

In November 2014, Carter filed a complaint under 42 U.S.C § 1983, alleging that DMH employees working at Fulton State Hospital had violated his rights under the Fourth, Eighth, and Fourteenth Amendments. The complaint alleged that the defendants and two Missouri Highway Patrol officers had approached Carter at the hospital and informed him that they needed his fingerprints, a blood sample, and a mouth swab. According to the complaint, when Carter refused to cooperate unless the officers produced a valid search warrant, the officers ordered the defendants to restrain Carter and obtain the samples. Carter alleged that at that point, all nine staff members "physically assaulted and attacked" him. He claimed that the attack resulted in a pulled tendon on his left index finger; a bruise, sprain, and cut on his left middle

---

[1] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

-2-

finger; and a bruise on his left arm.  Carter further alleged that the defendants failed to provide appropriate medical treatment for these injuries.

The defendants moved to dismiss Carter's complaint.  They argued that they did not violate Carter's Fourth Amendment rights by taking Carter's fingerprints, mouth swab, and blood sample because, as a sexually violent predator, Carter was required to provide these materials under Missouri law.  According to section 650.055.1 of the Missouri Revised Statutes, "[e]very individual who . . . [h]as been determined to be a sexually violent predator . . . shall have a fingerprint and blood or scientifically accepted biological sample collected for purposes of DNA profiling analysis."  The defendants further argued that Carter's assertion that the defendants employed excessive force failed to state a claim under the Fourth Amendment because Carter conceded that he resisted the efforts of the highway patrol officers to obtain his information and because his bare conclusion that he was "physically assaulted and attacked" was not sufficient to withstand a motion to dismiss.  The defendants also contended that neither the manner in which they obtained the samples nor any alleged delay in Carter's receipt of medical treatment violated Carter's rights under the Eighth or Fourteenth Amendments.  Finally, the defendants argued they were entitled to qualified immunity because their alleged forcible collection of Carter's fingerprints, mouth swab, and blood sample represented conduct that a reasonable officer would believe is lawful.  *See James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006).

The district court granted the defendants' motion to dismiss.  The court found that the warrantless collection of Carter's fingerprints, mouth swab, and blood sample did not violate the Fourth Amendment because this collection represented a reasonable, minimal intrusion and because Carter had a reduced expectation of privacy as a civilly committed sexually violent predator.  The court also concluded that Carter failed to plead facts showing that the manner in which the defendants

-3-

collected these materials violated Carter's rights under the Fourth, Eighth, or Fourteenth Amendment. Finally, the court ruled that the defendants were entitled to qualified immunity because Carter failed to state facts demonstrating the violation of a constitutional right that was clearly established at the time of the alleged violation and because the defendants' alleged conduct was reasonable under the circumstances alleged in the complaint. Carter appeals.

## II.

On appeal, Carter argues only that the district court erred when it dismissed his claim that the defendants' warrantless, forcible drawing of his blood to produce a DNA profile violated his rights under the Fourth Amendment. We review *de novo* a district court's dismissal under Rule 12(b)(6), taking all facts alleged in the complaint as true. *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Similarly, defendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

## A.

In appealing the dismissal of his Fourth Amendment claim, Carter first contends that because he was a civilly committed individual rather than a pre-trial detainee or a prisoner, the defendants could not collect a blood sample to produce his DNA profile without first demonstrating individualized suspicion of criminal wrongdoing and acquiring a search warrant. However, we do not reach the question

of whether the alleged warrantless collection of Carter's blood sample violated the Fourth Amendment because the defendants are entitled to qualified immunity with respect to this claim. *See Pearson v. Callahan*, 555 U.S. 223, 240-42 (2009) (holding that courts have the discretion to recognize an official's entitlement to qualified immunity without first deciding whether a constitutional violation took place).

"Qualified immunity shields government officials from liability for civil damages for discretionary acts that do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 772 (8th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, the defendants are entitled to qualified immunity with respect to their alleged taking of Carter's blood sample because Carter has failed to demonstrate that, at the time of the events in question, civilly committed sexually violent predators maintained a clearly established right to be free from the warrantless drawing of a blood sample to produce a DNA profile. To the contrary, a reasonable person interpreting the law governing the defendants' conduct could have concluded that the Constitution permitted the warrantless collection of this information from such individuals.

First, we previously have held that civilly committed individuals "retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012). Shortly after our decision in *Beaulieu*, the Supreme Court held in *Maryland v. King* that the Fourth Amendment does not require authorities to obtain a warrant before conducting a mouth swab to obtain the DNA profile of a pretrial detainee. 569 U.S. ---, 133 S. Ct. 1958 (2013). Relying on these two cases, therefore, the defendants reasonably could have concluded that the Fourth Amendment does not prohibit the warrantless collection of a civilly committed person's DNA profile. Indeed, the defendants have shown that several of the same government interests

identified in *King* reasonably could justify the DNA identification of a civilly committed sexually violent predator, including determining "the [individual]'s future dangerousness" and the extent he might be "inclined to flee" from confinement. *See id.* at 1972-73.

Second, courts generally have recognized the collection of a blood sample as a minimally intrusive mechanism for obtaining information from individuals in state custody. *See, e.g.*, *Schmerber v. California*, 384 U.S. 757, 771 (1966) (noting that blood draws involve "virtually no risk, trauma, or pain"); *United States v. Amerson*, 483 F.3d 73, 84 (2d Cir. 2007) (recognizing that "all the common methods of obtaining [a] DNA sample" involve only minimal intrusions upon privacy interests); *Rise v. Oregon*, 59 F.3d 1556, 1560 (9th Cir. 1995) ("That the gathering of DNA information requires the drawing of blood rather than inking and rolling a person's fingertips does not elevate the intrusion upon the plaintiffs' Fourth Amendment interests to a level beyond minimal."), *overruled on other grounds by City of Indianapolis v. Edmond*, 531 U.S. 32 (2000). We acknowledge that the Supreme Court's recent decision in *Birchfield v. North Dakota* may affect our assessment of the reasonableness of this collection method in future cases. *See* 579 U.S. ---, 136 S. Ct. 2160, 2178 (2016) (recognizing that blood draws are more intrusive than other methods of obtaining information from individuals stopped for drunk driving). However, because this decision was announced well after the events in question, it has no implications for our analysis of Carter's "clearly established" rights. *See Moore*, 381 F.3d at 772. Given the state of the law at the time of the alleged events and his status as a civilly committed sexually violent predator, Carter did not have a "clearly established" right to be free from the warrantless collection of his blood sample for the purpose of obtaining his DNA profile. *See id.* As a result, the district court did not err when it found that the defendants are entitled to qualified immunity with respect to this claim. *See Bradford*, 394 F.3d at 1015.

B.

Carter also argues that the district court erred when it ruled that he failed to allege facts sufficient to state a claim that the force the defendants employed when taking his blood sample violated his rights under the Fourth Amendment. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009) (quoting *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008)). Whether an officer's use of force is excessive is a question of whether "the amount of force used was objectively reasonable under the particular circumstances." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). The use of force is not excessive where it involves only the level of physical coercion necessary to execute an otherwise lawful seizure. *See Brown*, 574 F.3d at 496 ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))); *see also Peña-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st Cir. 2004) (affirming dismissal of excessive force claim in which "the allegations demonstrate[d] no more than the 'degree of physical coercion' typically attendant to an arrest" (quoting *Graham*, 490 U.S. at 396)).

Under this standard, Carter's bare assertion that all of the defendants simultaneously "physically assaulted and attacked him" fails to state a claim that those defendants violated his Fourth Amendment rights. Carter alleges no facts regarding the "amount of force" involved in this alleged attack, precluding any inference that such force was not "objectively reasonable under the particular circumstances." *See Small*, 708 F.3d at 1005. Nor do Carter's allegations regarding the injuries he sustained permit an inference that the defendants used excessive force.

-7-

*See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("The degree of injury [suffered in an excessive-force case] is certainly relevant insofar as it tends to show the amount and type of force used."). To the contrary, the district court concluded that the injuries Carter alleges—a pulled tendon on his left index finger, a bruise, sprain, and cut on his left middle finger, and a bruise on his left arm—resulted from his resistance to the defendants' efforts to obtain a blood sample. *Cf. Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (recognizing that "whether the suspect is actively resisting or attempting to evade" an otherwise lawful arrest is a key factor in determining whether officers employed reasonable force (quoting *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009))). As explained above, the defendants reasonably could have believed that the law permitted the warrantless collection of Carter's blood sample. Because Carter alleges no facts permitting a plausible inference that the defendants employed force in excess of the physical coercion attendant to overcoming his resistance to this seizure, he fails to state an excessive-force claim under the Fourth Amendment. *See Brown*, 574 F.3d at 495.

## III.

For the foregoing reasons, we affirm the district court's dismissal of Carter's claim.

_____