# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1038
No. 05-1096

_____

Kimberly Pietrafeso, as Personal     *
Representative of the Estate of Rocco    *
Pietrafeso, deceased,     *
    *
    Plaintiff - Appellant/     *    Appeals from the United States
    Cross Appellee,     *    District Court for the
    *    District of South Dakota.
    v.     *
Lawrence County, South Dakota, et al.,   *
    *
    Defendants - Appellees/     *
    Cross Appellants.     *

_____

Submitted: February 16, 2006
Filed: July 11, 2006

_____

Before LOKEN, Chief Judge, LAY and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Rocco Pietrafeso (Rocco) died following an acute asthma attack while detained at the Lawrence County Jail in Deadwood, South Dakota. His widow, Kimberly, filed this § 1983 action alleging that Lawrence County and four County officials -- Chief Deputy Sheriff Joe Harmon, jail administrator Dale Larson, head jailer Bob Williams, and jailer Roger Asheim -- were deliberately indifferent to Rocco's serious medical needs when they delayed medical treatment and denied prescribed medications. At

the close of the plaintiff's case at trial, the district court[1] granted defendants' motion for judgment as a matter of law. Kimberly Pietrafeso appeals. Reviewing *de novo* the district court's grant of judgment as a matter of law, we conclude that the evidence did not permit reasonable jurors to find that any defendant was deliberately indifferent to Rocco's serious medical needs. See Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998) (standard of review). Accordingly, we affirm.

## I.

We briefly summarize the trial evidence, resolving factual conflicts in favor of Pietrafeso. On Friday, July 28, 2000, Rocco was transferred from a correctional facility in Sterling, Colorado, to the Lawrence County Jail, a holding facility for pretrial detainees. The jail contracts with a local hospital for needed medical services. Rocco arrived at the jail at 7:10 p.m. Jailer Asheim conducted the intake screening interview, after receiving from the van driver an envelope marked with Rocco's name, inmate number, and the following notation in bold red letters:

URGENT
Colo Inter-Correctional
Medical Summary Transfer Report
DELIVER TO MEDICAL DEPARTMENT
AT ONCE

In the interview, Rocco told Asheim that he suffered from a severe asthma condition. Rocco said he was taking a "bunch" of medications, though he brought with him to the jail only an Albuterol[2] inhaler. Rocco did not tell Asheim that on July

---

[1]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota.

[2]Albuterol is a "beta 2 allergic drug" that treats asthma attacks by relaxing the muscles in the bronchia airways so that air may pass through.

20, just eight days earlier, he was sent to the Colorado prison's emergency clinic suffering from a severe asthma attack. Vance Siedenburg, the physician's assistant who treated Rocco at the prison clinic, testified that he exhibited "difficult breathing, sweating profusely, anxiety level very high, secondary to inability to breathe." Siedenburg administered steroid and adrenaline medications to alleviate Rocco's constricted bronchia. Siedenburg testified that he last saw Rocco on July 25, when his asthmatic condition had stabilized. Siedenburg prescribed two steroids, Prednisone and Beconase; two anti-anxiety medications, Ativan and Vistaril; an antihistamine, Zantac; Singulair; an Albuterol inhaler; and nebulizer treatments as needed.[3] Siedenburg testified that the Colorado correctional officials did not consult him in preparing the Medical Summary Transfer Report that accompanied Rocco to the Lawrence County Jail in the red-lettered envelope.

Asheim testified that Rocco was tired when he arrived at the jail but exhibited no wheezing, difficulty breathing, or coughing during the intake interview. After placing Rocco in a cell with his inhaler, Asheim called Chief Deputy Harmon to ask permission to take Rocco and the red-lettered envelope to the hospital's emergency room so that the "bunch" of prescriptions could be filled. When Asheim advised that Rocco was not having any problems and had his inhaler, Harmon told Asheim to call the hospital, explain the situation, and see if the emergency room would fill prescriptions without seeing Rocco. Asheim called the hospital and was told that no prescriptions would be filled without seeing Rocco. Asheim then called head jailer Bob Williams, explained the situation, and suggested that Rocco be taken to the emergency room Saturday morning so that his prescriptions could be filled before the

---

[3]Medical professionals testified that steroids are powerful anti-inflammatory medications that help prevent the lungs from filling with mucous; anti-anxiety drugs are useful because stress instigates and compounds asthma attacks; Zantac is a proton inhibitor that reduces another instigating factor; and Singulair is an immune response medication that enhances the effect of inhalers. A nebulizer is a machine similar to a vaporizer that helps an asthma patient inhale medications deeper into the lungs.

local pharmacy closed at noon. Before leaving the jail, Asheim taped the unopened red-lettered envelope to a conspicuous shelf in the control room.

Rocco was not taken to see a doctor Saturday morning, and his prescriptions remained unfilled. When Asheim came to work Saturday afternoon, Williams said he did not remember being asked to do that. Asheim's shift ended at 11:00 p.m. Saturday. He could not sleep that night because he knew from a former girlfriend's experience that a person with severe asthma had a constant need for medications. On Sunday morning, Asheim discussed the situation with Sheriff Rick Mowell, who said that Rocco could wait until Monday or Tuesday to see a doctor since he was not in apparent distress. Still concerned, Asheim then took the unopened red-lettered envelope to physician's assistant Kay Huhnerkoch at the hospital.

Huhnerkoch opened the envelope and reviewed its contents. A Colorado Inter-Correctional Medical Summary Transfer Report dated July 19, 2000, advised that Rocco was last seen by a physician on July 10 and listed his current medications as Albuterol, Ativan, and an antidepressant, Imipramine. The Report did not disclose Rocco's severe asthma attack on July 20, his treatment by physician's assistant Siedenburg, or the medications Siedenburg prescribed on July 25. The envelope also contained a one-month "Hospital Pass" for "Breathing Treatment" every 4-6 hours. Siedenburg described this document as a "kite" permitting a Colorado inmate to access the prison clinic without further approval; it was not a prescription. After reviewing these documents, Huhnerkoch advised Asheim that the inhaler was sufficient for the weekend unless Rocco needed to use it more than three times in a four-to-five-hour period, in which case he should be brought to the hospital's emergency room. Asheim returned to the jail with a note from Huhnerkoch to that effect and personally told Rocco what the note said. Pietrafeso's expert medical witness at trial, a forensic pathologist, testified that Huhnerkoch's note was prudent because excessive use of an inhaler means that the Albuterol is not effectively treating an asthma attack.

Asheim testified that Rocco was not wheezing or coughing or showing signs of discomfort and did not ask for a doctor when Asheim explained Huhnerkoch's note. However, a cell-mate testified that Rocco's physical condition deteriorated over the weekend and that he repeatedly asked the jailers for his medications. Similarly, Rocco's sister testified that he called her repeatedly to report that his inhaler was not working and that he needed more medication. She reported Rocco's complaints to jail administrator Larson on Monday, July 31.

Rocco was taken to see a doctor at 9:30 a.m. on Tuesday, August 1. The doctor reported:

> Rocco was seen today. He has a long-standing history of reactive airway disease and COPD. Recently he has been incarcerated and unfortunately he has just been able to get his Albuterol inhaler, which is keeping him relatively stable, but he is quite uncomfortable and needs a broader treatment program. He has noticed just a slight amount of green material when he is coughing but this is minimally so. . . . He has had anxiety background with Ativan and Imipramine. . . . He is at the point where he feels that he may need some systemic steroids, which he has been on in the past. *He is not on any topical steroid at this point.*

(Emphasis added.) The doctor prescribed three inhalers (Albuterol, Flovent, and Salmeterol), Albuterol nebulizer treatments if needed, Ativan, Imipramine, and Singulair. He noted, "I think this needs to be reviewed within a week to see that he is stabilizing with this. If he is not, we may need to consider systemic steroids."

At 4:00 p.m. that afternoon, Larson picked up the prescribed medications at the local pharmacy and delivered them to Asheim at the jail. Asheim brought them to Rocco who said he needed to use the nebulizer. The nebulizer Asheim brought lacked a mouthpiece and could not function. When Asheim returned with a mouthpiece, Rocco was wheezing and in asthmatic arrest, but neither Rocco nor the jailers knew how to mix the prescribed Albuterol solution. Rocco found a pre-mixed bottle of

Albuterol solution in the nebulizer left by its previous user. After breathing the nebulizer mist for a few minutes, he told Asheim it was not working. Asheim called an ambulance which arrived at 4:30 p.m. and rushed Rocco to the hospital. Rocco died of an acute bronchial asthma attack at 5:06 p.m.

The forensic pathologist testified that the level of Albuterol in Rocco's bloodstream showed that he had taken far more than the prescribed dosage of that "rescue" drug without overcoming the acute asthma attack. The pathologist further testified that the Flovent and Salmeterol inhalers would not treat an acute attack because these are maintenance drugs, not rescue drugs. "What would help him for the acute attack would be the Prednisone," the steroid Rocco had been given in Colorado. Moreover, the pathologist explained, if an asthma patient's Prednisone is abruptly taken away, "you are going to be very likely to have a relapse and have another acute attack." He admitted on cross examination that Prednisone was not listed as a current medication on the Colorado Medical Summary Transfer Report that accompanied Rocco to the Lawrence County Jail.

## II.

On appeal, Pietrafeso primarily argues that the district court erred in granting Lawrence County judgment as a matter of law because there was sufficient evidence for a reasonable jury to find that the County had "grossly inadequate" policies for dealing with transferees' urgent medical needs that reflected a deliberate indifference to the constitutional rights of detainee Rocco Pietrafeso.

In Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 407 (1997), the Supreme Court clarified the standards for municipal liability under § 1983. A county is liable if an action or policy itself violated federal law, or if the action or policy was lawful on its face but "led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known or obvious

consequences."   Here, Lawrence County's policies and practices for providing inmates with needed medical care were lawful on their face.  Thus, Pietrafeso's claim that the policies were constitutionally inadequate required proof that at least one of the individual defendants violated Rocco's constitutional rights and caused the alleged injury.  See Golberg v. Hennepin County, 417 F.3d 808, 812-13 (8th Cir. 2005); Olinger v. Larson, 134 F.3d 1362, 1367 (8th Cir. 1998).

The Eighth Amendment protects prison inmates from deliberate indifference to their serious medical needs.  Though Rocco was a pretrial detainee, not an inmate, Pietrafeso concedes that this substantive due process claim is governed by the same deliberate indifference standard.  To define deliberate indifference for these purposes, the Supreme Court has adopted the criminal law subjective standard of recklessness -- "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Moore v. Briggs, 381 F.3d 771, 773-74 (8th Cir. 2004), quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994); see Vaughn v. Greene County, 438 F.3d 845, 850 (8th Cir. 2006). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed."  Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995).  However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions."  Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006).

Turning to the individual defendants in this case, head jailer Williams was clearly entitled to judgment as a matter of law because Pietrafeso did not call him as an adverse witness and thus there was no evidence that he actually knew of and recklessly disregarded a substantial risk of serious harm to Rocco if his access to prescribed medications was delayed over the weekend of July 29-30.  The only evidence against Williams was Asheim's testimony that Williams forgot to take Rocco

and the red-lettered envelope to a doctor on Saturday morning.  At most, that is evidence of negligence, not deliberate indifference.

The evidence against Chief Deputy Harmon and Jail Administrator Larson also failed to prove subjective deliberate indifference.  Harmon never saw Rocco while he was detained at the jail.  Asheim called Harmon Friday evening to discuss the red-lettered envelope and the missing "bunch" of medications. When Asheim advised that Rocco had an inhaler and exhibited no problem during the intake interview, Harmon saw no need to take Rocco to the hospital emergency room and told Asheim to try to get the prescriptions filled by phone.  That one conversation did not prove deliberate indifference.  Larson, too, did not see Rocco over the weekend.  Pietrafeso argues that Larson must have opened the red-lettered envelope because, when Rocco's sister called the jail on Monday, Larson knew that Rocco needed Albuterol nebulizer treatments every four to six hours.  But by Monday, Huhnerkoch had reviewed the envelope's contents and advised that Rocco did not require emergency care before seeing a doctor unless his need to use the Albuterol inhaler became too frequent.  Thus, before Rocco saw the doctor on Tuesday morning, Larson acted in accordance with Huhnerkoch's advice.  Regarding the tragic events of Tuesday afternoon, Pietrafeso does not argue that Larson was guilty of deliberate indifference in obtaining and delivering Rocco's medications to the jail just before Rocco suffered the fatal attack.

That leaves Pietrafeso's case against jailer Asheim.  It is undisputed that Asheim knew Rocco was a severe asthmatic with a constant need for medications. Asheim had personal contact with Rocco every day that he was detained at the jail, including Sunday.  Though Asheim denied it, we must credit the cell-mate's testimony that Rocco repeatedly asked the jailers for his medications and that his condition progressively worsened over the weekend.  But the evidence is undisputed that Asheim went to great lengths to have Rocco's prescriptions filled.  Most significantly, Asheim took the red-lettered envelope to physician's assistant Huhnerkoch on

Sunday, Asheim's day off, and then visited Rocco at the jail to tell him of Huhnerkoch's advice. Rocco's sister testified that, over the weekend, "I believe [Asheim] was trying to do everything that he could." During the frantic minutes on Tuesday afternoon when Rocco suffered the fatal attack, Asheim could be faulted for bringing a nebulizer without a mouthpiece, for not knowing how to prepare the nebulizer solution, and for allowing Rocco to inhale a prior user's solution. But Asheim was trying to treat the attack, not ignore it. This may be evidence of negligence, but it was not deliberate indifference.

The evidence viewed in the light most favorable to Pietrafeso shows unnecessary delay in getting the red-lettered envelope to a medical professional who could determine if Rocco had an immediate need for medications in addition to his inhaler. But when the envelope was opened by Huhnerkoch on Sunday morning, it contained an outdated list of "current medications" that did not include those prescribed by Siedenburg the previous week, when Rocco suffered a severe asthma attack at the Colorado prison. Thus, the Lawrence County medical team and jailers never knew that, before he arrived from Colorado, Rocco had been taking Singulair, Vistaril, and two steroids whose abrupt discontinuance could be dangerous. Rocco's autopsy revealed an excessive level of Albuterol in his bloodstream, confirming that he had access to that rescue drug and overused it because it was not working effectively. The sequence of events ended in tragedy, arguably due to the unintentional negligence of correction officials at the Colorado prison and the Lawrence County jail. But that is not enough to support a § 1983 claim of deliberate indifference to serious medical needs. Accordingly, the district court did not err in granting defendants judgment as a matter of law at the close of Pietrafeso's case.

The judgment of the district court is affirmed. Appellees' cross appeal is dismissed as moot.

LAY, Circuit Judge, concurring.

A prison official is deliberately indifferent to a prisoner's serious medical needs only if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. I write separately merely to emphasize that Rocco's death, while undisputably tragic and possibly avoidable, was not the result of deliberate indifference by the defendants.

From Sunday on, all the defendants were following the advice of medical professionals. The medical professionals who treated Rocco were working without the proper documentation of Rocco's medical history, including notation of the steroid medication prescribed to prevent another attack. The fault in this case appears to be that of the institution from which Rocco was transferred, not the institution in which he ultimately died. Misinformation, not deliberate indifference, was the ultimate cause of his death.

_____