# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.10-2805

_____

Vickie Fields,

        Plaintiff/Appellee,

v.

Bill Abbott, et al.,

        Defendants/Appellants.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*

_____

Submitted: April 14, 2011
Filed: August 30, 2011

_____

Before WOLLMAN, GILMAN,[1] and MELLOY, Circuit Judges.

_____

GILMAN, Circuit Judge.

In 2004, Vickie Fields was employed as a jailer in Miller County, Missouri. While at work one evening in July of that year, Fields was seriously injured by two inmates who took her hostage and attacked her after she honored their request to visit the jail's law library.

_____

[1]The Honorable Ronald Lee Gilman, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Fields filed a civil rights action against Miller County, its sheriff, three of its county commissioners, and several other defendants to recover for her injuries. All of the defendants moved for summary judgment, including the Miller County sheriff and the Miller County commissioners (collectively, the Miller County individual defendants), who asserted that they were entitled to qualified immunity. Thereafter, the district court granted summary judgment in favor of all of the defendants other than Miller County and the Miller County individual defendants.

The Miller County individual defendants have now filed this interlocutory appeal. They allege that the district court erred in concluding that a reasonable jury could find that they violated Fields's substantive due process rights. For the reasons set forth below, we conclude that the Miller County individual defendants are entitled to qualified immunity. We therefore reverse the judgment of the district court and remand the case for further proceedings against Miller County, the sole remaining defendant in this case.

## I. BACKGROUND

The facts giving rise to this interlocutory appeal stem from injuries that Fields suffered on July 21, 2004 while working as a jailer for the Miller County Jail. Fields and two other jailers were at the jail that night when inmates Lawrence Arnold and John Reynolds requested access to the jail's law library, which was located in the drunk-tank cell. Arnold stated that he was Reynolds's "attorney." The Miller County Jail's Standard Policy and Procedures Manual specifies that inmates may "assist other inmates . . . in researching and preparing legal documents, consistent with security." It also stated that all "denials of access to the law library will be fully documented."

Fields was not aware of any policy or practice with regard to placing two inmates in the drunk-tank cell at the same time. She believed that she was required to honor the inmates' request under the jail's policy of ensuring inmates access to the

law library and of allowing inmates to assist each other with legal issues. Fields acknowledges that she and one of the other jailers made the decision to put Arnold and Reynolds in the drunk tank together.

To honor their request, Fields escorted the two inmates, unhandcuffed, to the law library. She chose to move Arnold and Reynolds without handcuffs because she was allegedly told that there was no need to handcuff prisoners when transferring them within the facility.

While Arnold and Reynolds were in the law library, Reynolds asked Fields if he could use the restroom and get a drink of water. Before Fields opened the drunk-tank door, she saw Arnold and Reynolds standing near the middle of the cell. Prior to opening the door she did not give the inmates any instructions about where to stand, although she acknowledges that ordering inmates to stand away from the cell door prior to opening it was discussed in the basic-training course she had taken.

The drunk-tank door had a handle and lock on the outside, which Fields used to open the door, as well as a handle on the inside of the door that was accessible to Arnold and Reynolds. As Fields was opening the door, one of the inmates grabbed the inside handle and pulled back on the door, causing Fields to lose her balance. At that point, the inmates grabbed Fields and held her hostage. Fields alleges that, as a result of the incident, she suffered psychological trauma and underwent multiple surgeries for injuries to her back, rotator cuffs, hips, and hand.

A few months prior to the events at issue in this case, Fields was injured in a similar incident involving the same drunk-tank door. During that incident, an inmate who was attempting to commit suicide grabbed the inside handle of the door and pulled the door in on Fields. The door hit Fields twice, once catching her hand and once striking her neck. Fields reported the incident and complained that the interior drunk-tank door handle allowed inmates to gain control of the door from inside the cell.

The record also includes evidence that the Miller County Jail was understaffed, and that Sheriff Abbott knew that he did not have as many jailers working in the jail as the Missouri Department of Corrections recommended that he employ. Despite the Miller County Jail's understaffing problems, the jail still accepted inmates who were transferred from other county jails. Arnold in fact had been transferred from the Wright County Jail to the Miller County Jail about a week before the events in this case took place.

As a result of the injuries that she sustained on July 21 2004, Fields alleged that, under 42 U.S.C. § 1983, Miller County and the Miller County individual defendants violated her substantive due process rights. Miller County and the Miller County individual defendants moved for summary judgment, arguing that Fields's claim had no merit and that they were entitled to judgment as a matter of law. The Miller County individual defendants also moved for summary judgment based on qualified immunity. By consent of the parties, these motions were referred to the assigned magistrate judge for final disposition in the district court pursuant to 28 U.S.C. § 636(c).

In rejecting the Miller County individual defendants' motion for summary judgment based on qualified immunity, the district court applied the state-created-danger exception to the general rule that a governmental entity is not liable for injuries suffered by its employees at the hands of a third party. The court concluded that

> a reasonable Miller County Sheriff and reasonable County Commissioners would have reasonably understood the known and obvious dangers of having an interior door handle inside a drunk-tank cell, having a significantly understaffed jail, and having no classification of the jail's inmates, could, in their totality, support a claim that the Miller County Jail was deliberately indifferent in subjecting its jailers, specifically Fields, to these conditions.

It therefore held that these defendants were on notice "that their actions in creating the dangerous conditions in the Miller County Jail created a risk of serious harm to Fields and the jail staff, and therefore, could violate Fields'[s] substantive due process rights as protected under the Fourteenth Amendment."

The Miller County individual defendants raise two issues on appeal. They argue that the court erred in concluding that (1) they could be found liable under the state-created-danger exception, and (2) the state-created-danger exception was clearly established when Fields was injured in July 2004.

## II. ANALYSIS

Although "we ordinarily lack jurisdiction to hear an immediate appeal of a denial of summary judgment," an interlocutory appeal challenging the denial of summary judgment based on qualified immunity "is appealable to the extent that it turns on an issue of law." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 456 (8th Cir. 2011) (internal quotation marks omitted). We review such a denial de novo, viewing the evidence in the light most favorable to the nonmoving party. *Id.*

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A qualified-immunity analysis requires ascertaining (1) whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the officer's conduct violated a constitutional right," and (2) "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that *Saucier*'s two-step sequence is not mandatory). Under the rule established in *Pearson*, we have the discretion to decide "which of the two prongs

of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

With regard to the first prong of the qualified-immunity analysis, Fields alleges that, under the state-created-danger theory of liability, the Miller County individual defendants violated her constitutional substantive due process rights because they were deliberately indifferent to a "known significant risk of harm, resulting in injury to the public employee." "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The Due Process Clause does not require that municipal employees be guaranteed certain minimal levels of safety and security in the workplace. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127, 129 (1992) (holding that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm"). And "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 195 (1989) (holding that the failure of the county's Department of Social Services to provide a child with adequate protection against his father's violence did not violate the child's substantive due process rights). Nor does the Due Process Clause "transform every tort committed by a state actor into a constitutional violation." *Id.* at 202.

But substantive due process does require a state to protect individuals under two specific circumstances. "First, the state owes a duty to protect those in its custody." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005). "Second, the state owes a duty to protect individuals if it created the danger to which the individuals are

-6-

subjected." *Id.* Fields relies on the state-created-danger theory of liability in support of her claim.

To succeed on such a theory, Fields must prove (1) that she was a member of "a limited, precisely definable group," (2) that the municipality's conduct put her at a "significant risk of serious, immediate, and proximate harm," (3) that the risk was "obvious or known" to the municipality, (4) that the municipality "acted recklessly in conscious disregard of the risk," and (5) that in total, the municipality's conduct "shocks the conscience." *Id.*

The Miller County individual defendants argue that Fields has failed to satisfy any of the five elements required to succeed under the state-created-danger theory. Because we conclude that, even after viewing the facts in the light most favorable to Fields, the Miller County individual defendants' conduct was not conscience shocking and therefore did not violate Fields's substantive due process rights, we will focus our analysis on that element and will not address the other four *Hart* factors. *See Rubek v. Barnhart*, 814 F.2d 1283, 1285 (8th Cir. 1987) (holding that because the jury found that the defendant did not deprive the appellants' of their constitutional rights, the appellants' § 1983 action must fail because they did not prove one of the essential elements of their § 1983 claim).

"[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault." *Lewis*, 523 U.S. at 848. "[A]ctionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Hart*, 432 F.3d at 806 (brackets, ellipses, and internal quotation marks omitted). Under the state-created-danger theory, negligence and gross negligence cannot support a § 1983 claim alleging a violation of substantive due process rights. *Id.* at 805. And "[p]roof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005).

The deliberate-indifference standard is employed only where actual deliberation is practicable. *Lewis*, 523 U.S. at 851–53 (differentiating between substantive due process cases in which the deliberate-indifference standard applies because prison officials have the luxury of time to make unhurried judgments regarding inmate welfare, and cases where a higher standard of intent to harm applies because certain unforseen circumstances demand instant judgment). In this case, the Miller County individual defendants acted under circumstances in which actual deliberation was arguably practicable because of Fields's allegations that (1) they had been made aware, based on her previous injuries from the same drunk-tank door, that the door was dangerous, and (2) they were previously informed that the jail was understaffed. *See Hart*, 432 F.3d at 806 (applying the deliberate-indifference standard). We will thus apply that standard here.

To define deliberate indifference in a substantive due process case, the Supreme Court has adopted the subjective standard of criminal recklessness set forth in the Eighth Amendment context. *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004). Deliberate indifference requires that an official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hart*, 432 F.3d at 806 (internal quotation marks omitted). And deliberate indifference that shocks the conscience in one environment "may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850.

In this case, the district court concluded that whether the Miller County individual defendants' conduct is conscience shocking "is a close question," but ultimately held that a reasonable jury could find that they acted with conscience-shocking deliberate indifference. In reaching this conclusion, the court relied on the Ninth Circuit case of *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), in which the court held that L.W. had stated a claim under § 1983 because the defendants deprived her

-8-

of her liberty by creating a "significant risk of harm to her, and did so with a sufficiently culpable mental state." *Id.* at 123. L.W.'s claim was based on injuries that she sustained when she was raped and terrorized by an inmate at a medium security custodial institution. *Id.* at 120. She sued the state employees who served as her supervisors and who had led her to believe that she would not be required to work alone with sex offenders.

The Ninth Circuit concluded that the actions of L.W.'s supervisors created the danger to which she fell victim by knowingly allowing her to work alone with a violent sex offender. *Id.* at 121. It held that because the supervisors were aware of the fact, among others, that the inmate would be alone with L.W. and that he would likely assault a female if left alone with her, L.W. had a valid § 1983 claim. *Id.* at 123.

We believe that *Grubbs* is easily distinguishable from the present case. The defendants in *Grubbs* knew that the inmate who attacked L.W. had an "extraordinary history of unrepentant violence against women," and that L.W. "would not be prepared to defend against or take steps to avert an attack because she had not been informed at hiring that she would be left alone with violent offenders." *Id.* at 121. As such, the court concluded that the *Grubbs* defendants had acted with deliberate indifference because they "used their authority as state correctional officers to create an opportunity for [the inmate] to assault L.W. that would not otherwise have existed . . . [and] enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending her work." *Id.*

Here, none of the Miller County individual defendants made any representations to Fields regarding the types of inmates that she would be dealing with or the safety of her workplace. And unlike L.W., Fields was aware of the potentially dangerous conditions to which she was subject because she had previously complained about, among other things, both the interior handle on the drunk-tank door and the understaffing of the jail. The conduct that Fields complains of here is simply

not comparable to the defendants' conscience-shocking actions in *Grubbs*. *See Lewis*, 523 U.S. at 849–50 (emphasizing that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). We therefore conclude that the district court's reliance on *Grubbs* was unjustified.

In this case, Fields asserts that the Miller County individual defendants knew of the dangers that the jail posed, but even with that knowledge neglected to make the jail safer. She alleges that several deficiencies at the jail led to her injuries, including its understaffing, the interior-mounted door handle, an alleged failure to follow the procedures for classifying inmates, an alleged lack of training, and the jail's acceptance of inmates from other counties. Fields argues that the Miller County individual defendants "were aware of facts from which an inference might have been drawn that a substantial risk of serious harm existed." *See James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006).

True enough, Sheriff Abbott testified at his deposition that he knew that the Miller County Jail was understaffed and that he was aware that Fields had complained about the interior-mounted door handle. But even if we assume, as we must for present purposes, that all of the Miller County individual defendants were aware of the facts from which an inference about the jail's possible dangers could be drawn, Fields has presented insufficient evidence to "show that any of [these defendants] actually drew such an inference." *See id.*

Fields, after all, was equally aware of the two most potentially dangerous conditions—the jail's understaffing and the interior-mounted door handle—and the Miller County individual defendants would have had no reason to believe that Fields would not take these conditions into account in her interactions with the inmates. Moreover, there is no proof in the record that the conditions that Fields complains of were so inherently dangerous that the injuries she sustained were highly likely to occur.

Fields nevertheless alleges that the Miller County individual defendants "actually considered the specific risks" that the Miller County Jail arguably presented. But the only evidence in the record as to any of the defendants' subjective beliefs relates to Sheriff Abbott's acknowledgment that the Miller County Jail needed more jailers. The record does not reflect whether any of the Miller County individual defendants subjectively believed that the drunk-tank door handle was dangerous. This evidence, taken in the light most favorable to Fields, might cause a jury to find that Sheriff Abbott was grossly negligent in failing to address the staffing concerns associated with the jail and in not removing the interior-mounted door handle. Even gross negligence, however, cannot support a § 1983 claim alleging a violation of the Due Process Clause. *See S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000). And the record contains no evidence that would support a finding of subjective recklessness by any of the county commissioners. *See Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 774 (8th Cir. 2004) (concluding that "[g]eneral allegations that management officials failed to ensure that staff would protect other residents from Hunn's known assaultive behavior is the kind of traditional tort law claim that the Supreme Court has refused to translate into a due process violation" (internal quotation marks omitted)).

The Miller County individual defendants' conduct in this case, "however arguably negligent it may now appear in the clear light of hindsight, does not reveal the existence of deliberate indifference on [their] part." *See James*, 458 F.3d at 730 (declaring such in a § 1983 case in which the appellant alleged that the state had acted with deliberate indifference, in violation of the Due Process Clause, by keeping a child in a potentially dangerous foster-care environment). We conclude that the Miller County individual defendants' actions constitute at most gross negligence, and "do not rise to the level of subjective deliberate indifference necessary to sustain a substantive due process claim." *See Hart v. City of Little Rock*, 432 F.3d 801, 808 (8th Cir. 2005).

In this regard, we respectfully disagree with the district court's conclusion that the Miller County individual defendants "would have reasonably understood the known and obvious dangers" of the jail conditions in question. The record simply does not support such a conclusion, nor does it support a conclusion that the Miller County individual defendants acted with the requisite criminal recklessness to be held liable for Fields's injuries under § 1983. *See Moore*, 381 F.3d at 773–74 (holding that a defendant must act with criminal recklessness before being found liable under the deliberate-indifference standard in a substantive due process case).

Because we conclude that the Miller County individual defendants did not violate Fields's substantive due process rights, we need not address the other prong of the qualified-immunity analysis; namely, whether the substantive due process right that Fields asserts was clearly established when the events in this case took place. *See Avalos v. City of Glenwood*, 382 F.3d 792, 801 (8th Cir. 2004) (deciding not to address the clearly established prong after concluding that the plaintiff's substantive due process rights had not been violated). The Miller County individual defendants are therefore entitled to qualified immunity with regard to Fields's substantive due process claim.

## III. CONCLUSION

For all of the reasons set forth above, we reverse the judgment of the district court to the extent that it denied qualified immunity to the Miller County individual defendants and remand the case for further proceedings against Miller County as the sole remaining defendant in this case.

_____