# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1540
_____

Tamela Montgomery,

*Plaintiff - Appellant,*

v.

City of Ames; Suzanne Owens, individually and in her official capacity as a Law
Enforcement Officer for the City of Ames Police Department; Heath Ropp,
individually and in his official capacity as a Law Enforcement Officer for the City
of Ames Police Department; Christine Crippen, individually and in her official
capacity as a Law Enforcement Officer for the City of Ames Police Department;
John Doe, individually and in his official capacity as a Law Enforcement Officer
for the City of Ames Police Department; State of Iowa; John Baldwin, individually
and in his official capacity as Director of the Iowa Department of Corrections;
Curt Forbes Residential Center; John McPherson, individually and in his official
capacity as Manager of Curt Forbes Residential Center,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 12, 2016
Filed: July 20, 2016
_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Angenaldo Bailey seriously injured Tamela Montgomery when he broke into her house and shot her several times before killing himself. At the time, Bailey was a resident of the Curt Forbes Residential Center, a halfway house facility operated by the State of Iowa in Ames. Montgomery sued the City of Ames, several Ames police officers, the Center, John McPherson (the Center's manager), the State of Iowa, and John Baldwin (the director of the Iowa Department of Corrections). We previously affirmed the district court's grant of summary judgment for the City of Ames and its police officers and remanded for further proceedings on the other claims. *Montgomery v. City of Ames*, 749 F.3d 689 (8th Cir. 2014). On remand, the district court[1] granted summary judgment for McPherson, Baldwin, the Center, and the State. Montgomery appeals that order, and we affirm.

I.

As we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Montgomery. Bailey had a history of abusing Montgomery. On November 12, 2008, Bailey was arrested for domestic abuse after he assaulted Montgomery. She stated that Bailey had struck her in the face, started to strangle her, and threatened to kill her. The following day, an Iowa state court issued an order of protection prohibiting Bailey from contacting Montgomery.

Bailey disobeyed the order and continued to contact Montgomery. In February 2009, authorities arrested Bailey at Montgomery's residence in Ames. Bailey, armed with a baseball bat, returned the following day, slapped Montgomery, and threatened to rape her. Police arrested Bailey and brought him to jail. After he was placed in a

---

[1]The Honorable John A. Jarvey, now Chief Judge, United States District Court for the Southern District of Iowa.

holding cell, Bailey hit his head against the walls and tried to wrap his belt around his neck in an apparent attempt to harm himself. The next month, after his release, Bailey forced a door open at Montgomery's residence and threatened to kill her. Montgomery told police that if they did not catch Bailey, she believed that he would come back and attack her. Police arrested Bailey on charges of aggravated interference with official acts and third-degree burglary.

An Iowa state court issued a second order of protection in June 2009, noting that Bailey previously had been convicted of a domestic abuse assault. Despite the order, Montgomery's neighbors reported seeing Bailey drive by Montgomery's residence in July 2009. By then, Bailey had been released from jail and was assigned to reside at the Curt Forbes Residential Center in Ames. Bailey continued to contact Montgomery in September 2009.

On September 28, 2009, Montgomery called the Ames police. Montgomery informed an officer, John Mueller, that Bailey was contacting her and coming to her residence, in violation of the protective order. Mueller informed Montgomery that he would locate Bailey and talk with him about the situation. Mueller went to the Center and spoke with a probation officer. The probation officer told Mueller that Bailey had "stepped out," and that Bailey might be found at a local workforce development office.

Mueller went to the workforce office, found Bailey, and discussed Montgomery's complaint against Bailey. Bailey claimed that Montgomery had contacted him by telephone. Mueller warned Bailey not to contact Montgomery in any way, and Bailey promised not to do so. Mueller then returned to Montgomery's residence and informed her of Bailey's statements. Montgomery admitted that she recently had called Bailey. Mueller warned her not to make such calls and then departed.

Around the same time that Montgomery called the police, she also contacted the Center. She told an unidentified man who answered the telephone that she felt threatened by Bailey. She requested that the Center not allow Bailey to leave on outings because he was contacting her when he left the facility.

Bailey returned to the Center from the workforce office. Later that afternoon, Bailey was allowed to leave the Center to go shopping at Walmart. At around 5:00 p.m., police received reports from Montgomery's neighbors that Bailey had been riding his bicycle around the neighborhood. Bailey returned to the Center. At 7:50 p.m., Bailey was allowed to leave to go to a Hy-Vee store for one hour. When Bailey did not return by 8:50 p.m., a staff member at the Center called the police to file a "run report" on Bailey. Rather than return to the Center, Bailey broke into Montgomery's home, shot her, and then shot himself. Montgomery sustained serious injuries from gunshot wounds.

Montgomery brought suit, alleging constitutional due process claims and state-law negligence claims against the City, several police officers, the Center, John McPherson (the manager of the Center), the State of Iowa, and John Baldwin (the director of the Iowa Department of Corrections). The constitutional claim against McPherson alleged that he acted with deliberate indifference to Bailey's history of violating protective orders and thus violated Montgomery's due process right to bodily integrity. Montgomery further alleged that Baldwin, the Center, and the State had maintained "official policies . . . of failing to prevent individuals in custody from violating protective orders" and "failed to establish an adequate and sufficient policy . . . for training supervisors and officers within the Department and Center relating to individuals in custody violating protective orders."

The district court granted summary judgment for all defendants. We affirmed the judgment in favor of the City and its police officers. Because Montgomery did not have notice that the district court would consider granting summary judgment for

the other defendants, we remanded for further proceedings on the remaining claims. *Montgomery*, 749 F.3d at 697. On remand, the district court granted summary judgment for McPherson, Baldwin, the Center, and the State on the federal claims, and dismissed the remaining state-law claims without prejudice. The court concluded that Montgomery presented insufficient evidence to establish a constitutional violation.

We review the grant of summary judgment *de novo*, viewing the record in the light most favorable to Montgomery. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We may uphold a grant of summary judgment for any reason supported by the record. *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013).

II.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). As a general matter, therefore, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

Montgomery relies on one recognized exception to this general rule. A State owes a duty to protect a citizen "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc); *see K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014). To succeed under this theory, a plaintiff must prove that the defendant affirmatively created a significant risk of serious, immediate, and proximate harm, that the risk was obvious or known to the defendant, that the defendant acted recklessly in conscious disregard of the risk, and

that the defendant's conduct "shocks the conscience." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005). Montgomery argues that the defendants created or increased a danger to her by authorizing Bailey to leave the Center to visit the Hy-Vee, despite his history of violence and Montgomery's cautionary telephone call to the Center earlier in the day.

As to Montgomery's claim against McPherson, the manager of the Center, we see several shortcomings. First, there is no evidence in the record that McPherson knew about Bailey's history of abusing Montgomery or Montgomery's telephone call to the Center on the afternoon of the shooting. Montgomery cites an Iowa statute directing a county attorney to give the director of the judicial district department of correctional services "a detailed statement of the facts and circumstances surrounding the crime committed and the record and history of the defendant as may be known to the county attorney." Iowa Code § 907.8(3). But the record does not include testimony or documents showing what the relevant county attorney gave to the director in McPherson's judicial district or what the director gave to McPherson. Nor is there evidence that the unidentified man at the Center with whom Montgomery spoke by telephone in the afternoon communicated to McPherson about Montgomery's concern for her safety. McPherson cannot be held liable under § 1983 for constitutional violations of a subordinate based on a *respondeat superior* theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Negligence or even gross negligence is insufficient to establish a violation of the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hart*, 432 F.3d at 805. Montgomery must present sufficient evidence to show that McPherson, through his own actions, violated the Constitution. That proof is lacking here.

Second, as the district court observed, there is also insufficient evidence to show that McPherson's subordinates at the Center were deliberately indifferent to a known or obvious substantial risk of harm to Montgomery when they authorized Bailey to visit the Hy-Vee. The Center's employees did not know whether Bailey

-6-

recently had violated the order of protection by contacting Montgomery. The Ames Police Department was investigating a report from Montgomery that Bailey had violated the no-contact order. But that investigation was in progress, and the police had received conflicting information about whether Bailey or Montgomery had initiated the forbidden contact. Montgomery eventually admitted that she had contacted Bailey. Nor, as the district court explained, is there evidence that the Center's employees were deliberately indifferent to Montgomery's well being. The record does not show that the unknown staff member who authorized Bailey to visit the Hy-Vee consciously disregarded a known or obvious risk to Montgomery.

Third, Montgomery has not established that McPherson or employees of the Center created a new danger to Montgomery or increased the danger that Bailey posed to Montgomery, because the danger to Montgomery existed before Bailey resided at the Center and would have continued to exist thereafter. Allowing Bailey to visit the Hy-Vee did not create a greater risk to Montgomery than what she would have faced if Bailey had never been assigned to the Center in the first place. *See S.S. v. McMullen*, 225 F.3d 960, 962-63 (8th Cir. 2000) (en banc). That Bailey was able to leave the Center during the evening of September 28 simply placed Montgomery back in the same situation that she occupied before Bailey was in custody or resided at the halfway house. Montgomery was not an institutionalized person to whom the State owed a duty, *cf. Youngberg v. Romeo*, 457 U.S. 307, 317 (1982), and the Supreme Court has rejected the notion that a State has an affirmative duty, enforceable through the Due Process Clause, to protect an identified victim when it knows that a person in custody poses a special danger to that victim. *DeShaney*, 489 U.S. at 197-98 & n.4. Montgomery has not presented evidence comparable to the allegations in *Wells v. Walker*, 852 F.2d 368, 371 (8th Cir. 1988), where state officials took action under state law to provide post-release transportation for a prisoner, used a citizen's store as the closest commercial transportation pick-up point, and thus affirmatively placed the citizen in a "unique, confrontational encounter" with a person known to have exhibited violent propensities.

-7-

Montgomery's claim against Baldwin, the director of the Iowa Department of Corrections, also fails for insufficient evidence. Baldwin had no personal involvement with events at the Center, and he cannot be held liable under a *respondeat superior* theory. Montgomery's complaint alleged that Baldwin failed to implement appropriate policies or adequately to train employees who worked at the Center, but because there is insufficient proof of a constitutional violation, Baldwin cannot be liable on these theories. *See Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012). The Eleventh Amendment bars Montgomery's claims against the State and the Center, because the State and its agencies are immune from suits for damages. *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663 (1975).

*        *        *

For the foregoing reasons, the judgment of the district court is affirmed.

_____